**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 23-cv-03054-CNS-MEH

TYLER LUETHJE,

     Plaintiff,

v.

TRAVIS KYLE,
SCOTT KELLY,

     Defendants.

---

### PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS

---

Plaintiff, Tyler Luethje, by and through his attorneys of the Civil Rights Litigation Group, LLP, hereby responds in opposition to Defendant's Motion to Dismiss:

### INTRODUCTION

This is a civil rights action arising from the reckless decision by Douglas County Sheriff's Deputies Travis Kyle and Scott Kelly ("Defendants") to deploy a police canine into Mr. Luethje's home to attack him in his bed, despite having no probable cause to believe he committed any crime, and no pressing threat, resistance, or flight to overcome.

### THE FACTS ESTABLISHED BY THE COMPLAINT

On the evening of February 11, 2022, Mr. Luethje's neighbor called 911 and reported that he saw a male break the front window of 1060 Riddlewood Ln., Highlands Ranch, Co 80129 (i.e., Mr. Luethje's home), and then ran away from the home without entering. Doc. 5 at ¶ 15. The neighbor was unable to provide a description of the male. *Id.* at ¶ 16.

Defendants responded to the call along with several other deputies with long rifles and Defendant Kyle's canine. *Id.* at ¶ 18. The Defendants received no report that the male had entered the home and did not hear any sounds suggesting violence or that a crime was being committed in the home. *Id.* at ¶¶ 17, 19. Despite the absence of an emergency, Defendants approached the broken window at the front of the house, removed the window screen, and broke out the remaining glass so that Defendant Kyle could send his canine into the home to roam and look for someone to bite. *Id.* at ¶ 20-21.

After unleashing the canine and sending it in, Defendant Kyle ordered the canine to find and bite whoever it found inside the residence. *Id.* at ¶ 22-23. Within moments, the canine found and attacked Mr. Luethje asleep in his bed, biting him repeatedly on his hands, abdomen, and arm. *Id.* at ¶ 24. Mr. Luethje vocalized his pain but did not resist the dog. *Id.* at ¶ 25. In response to Mr. Luethje's screams, Defendant Kyle did not rush in to render aid. Instead, he ordered, "bring me my dog!" *Id.* at ¶ 26. Defendants then entered the home and found the canine still attached to Mr. Luethje's arm, *Id.* at ¶ 27-28.  Defendants observed the canine aggressively jerking and pulling on Mr. Luethje's arm, while he screamed out "I live here!" repeatedly. *Id.* at ¶ 28-29. With the canine's teeth still firmly sunken into Mr. Luethje's arm, Defendants questioned him on who else was in the house and who broke the window, while the dog continue to bite. *Id.* at ¶ 31. Mr. Luethje immediately confirmed he had broken the window and that no one else was in the house while the canine continued to clamp down harder. *Id.* at ¶ 32-33. Defendant Kyle finally removed the canine from Mr. Luethje's arm after approximately one minute. *Id.* at ¶ 34.

Despite posing no threat and committing no crime in his own residence, Defendants

handcuffed Mr. Luethje and escorted him outside into the freezing cold. *Id.* at ¶ 35-37. Mr. Luethje was placed in the back of a patrol vehicle and eventually transferred to a gurney when EMS arrived. *Id.* at ¶ 38-39. At that time, Defendants took possession of Mr. Luethje's driver's license, which confirmed he lived at the address of the incident. *Id.* at ¶ 39-40. Mr. Luethje was taken to the hospital. *Id.* at ¶ 41. Defendants conducted a secondary search of Mr. Luethje's home in his absence and did not find anyone else inside or evidence of a crime. *Id.* at ¶ 42-43.

As a result of this violent canine attack, Mr. Luethje brings four claims: (1) unlawful entry/search of home, (2) unlawful arrest, (3) excessive force, and (4) failure to intervene.

## STANDARD OF REVIEW: 12(b)(6)

### A. Plausibility Standard

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This plausibility standard reflects the requirement in Rule 8 that pleadings must provide defendants with fair notice of the nature of the claims as well as the grounds upon which each claim rests. *See Khalik v. United Air Lines*, 671 F.3d 1188, 1191–92 (10th Cir. 2012); *also* Fed. R. Civ. P. 8(a)(2).

There is a strong presumption against dismissal for failure to state a claim under Rule 12(b)(6). *See Thomas v. Bruce*, 125 F.Appx. 964, 966 (10th Cir. 2005). Evaluating a complaint for "conclusory" allegations should involve a limited assessment of whether some complaint allegations deserve to be ignored because they are *legally* conclusive in nature.

*See Iqbal,* 556 U.S. at 1950 ("the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to *legal* conclusions.") (emphasis added). Most importantly, the court must accept the facts alleged in the complaint as true and construe any reasonably inferences in the light most favorable to the plaintiff. *Sanchez v. Hartley*, 810 F.3d 750, 754 (10th Cir. 2016).

### i. Facts Outside Plaintiff's Amended Complaint

Defendants ask the Court to consider facts outside of Plaintiff's Amended Complaint, specifically the 911 and dispatch audio ("Defendants' Exhibit") related to the incident. Doc. 16 at 2, n.1. However, in deciding a motion to dismiss, courts do not typically review and evaluate such outside evidence. It was well known that a Rule 12 analysis does "not look beyond the confines of the complaint itself." *MacArthur v. San Juan Cnty.*, 309 F.3d 1216, 1221 (10th Cir. 2002). Courts *may* consider limited evidence that is key to a Rule 12 analysis only where a "document is referred to in the complaint and central to the plaintiff's claims." *Prager v. LaFaver*, 180 F.3d 1185 (10th Cir. 1999).

The recording is not central to Plaintiff's claims. It represents only one piece of evidence in the evidentiary puzzle, which must be evaluated in conjunction with other evidence at the proper time (e.g., summary judgment). The neighbor called 911 and reported information to dispatch. Doc. 5 at ¶15. The Complaint does not allege that Defendants learned this information directly from the 911 call, *id*. at ¶53 ("The reports received by Defendants…"), and there are some discrepancies between the information transmitted and that received by the officers. For example, although the 911 caller hesitantly stated at one z this extraneous and disputed information at this time.

If the Court is inclined to consider the Defendants' exhibit, it will find that Defendants' Exhibit shows that the 911 dispatcher told the Defendants, "He said the male party took off running." *Id.* at 04:18. Furthermore, the 911 caller clarified that the suspect might not have committed a crime at all. Id. at 01:13 ("I don't know, I didn't get a good look at him. I'm pretty sure it's a guy. *He may have just been breaking into his house in order to, like, he lost his keys or something."*). The caller repeated his concern, saying, "***it might be his house and he lost his keys.***" *Id.* at 06:20. These statements make it even more clear the officers should not have assumed Mr. Luethje committed a crime.

### B. Unlawful Entry/Search

It is a basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable. *Payton v. New York*, 445 U.S. 573, 586 (1980). "[T]he Fourth Amendment has drawn a firm line at the entrance to the house." *Payton*, 445 U.S. at 590. Thus, "warrants are generally required to search a person's home or his person." *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006). "The sanctity of the home is too important to be violated by the mere possibility that someone inside is in need of aid—such a 'possibility' is ever-present." *United States v. Martinez*, 643 F.3d 1292, 1299-00 (10th Cir. 2011). Exceptions to the warrant requirement are "subject only to a few specifically established and well-delineated exceptions" that "must be strictly circumscribed by the exigencies." *Mincey v. Arizona*, 437 U.S. 385, 393–94 (1978). Exigencies manifest a "compelling" need for law enforcement to take immediate action. *Mincey*, 437 U.S. at 393–94. It cannot be used merely to make law enforcement more efficient, to safeguard evidence that could be protected in another manner, or simply

because a serious crime has been committed. *Id*. at 393–94. In the Tenth Circuit, exigent circumstances only exist when: (1) "the law enforcement officers have objectively reasonable grounds to believe that there is an immediate need to protect their lives or others," and (2) "the manner and scope of the search is reasonable.'" *Cortez v. McCauley*, 478 F.3d 1108, 1124 (10th Cir.2007) (en banc) (quoting *U.S. v. Najar*, 451 F.3d 710, 717-20 (10th Cir. 2006)).

### C. Unlawful Arrest

"A police officer may arrest a person without a warrant if he has probable cause to believe that person committed a crime." *Romero v. Fay*, 45 F.3d 1472, 1476 (10th Cir. 1995). "Probable cause exists if facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense." *Jones v. City and County of Denver*, 854 F.2d 1206, 1210 (10th Cir. 1988).

### D. Excessive Force

In evaluating a Fourth Amendment claim of excessive force, courts ask "whether the officer's actions are objectively reasonable in light of the facts and circumstances confronting them." *Graham v. Connor*, 490 U.S. 386, 397 (1989). Answering this question "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Casey v. City of Fed. Heights*, 509 F.3d 1278, 1281 (10th Cir. 2007) (citing *Graham*). The government's interest at stake is determined under the totality of the circumstances and guided by the Graham factors. (1) the severity of the crime at issue, (2) whether the suspect

posed an immediate threat to the safety of the officers or others, and (3) whether the suspect was actively resisting or attempting to flee arrest. *Graham*, 490 U.S. at 397.

### E. Qualified Immunity (QI)

Qualified immunity should only protect an officer if the existing law did not put an official on fair notice that their conduct would be unconstitutional. *See Games v. Wood*, 451 F.3d 1122, 1134 (10th Cir. 2006). Generally, "this means that there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts, must have found the law to be as the plaintiff maintains." *Maresca v. Bernalillo County*, 804 F.3d 1301, 1308 (10th Cir. 2015). But "a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has not previously been held unlawful." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002) (internal quotation marks omitted). Consequently, "officials can still be on notice that their conduct violates established law even in novel factual circumstances." *Id.* "The *Hope* decision shifted the qualified immunity analysis from a scavenger hunt for prior cases with precisely the same facts toward the more relevant inquiry of whether the law put officials on fair notice that the described conduct was unconstitutional." *Casey*, 509 F.3d at 1284. The Supreme Court recently reaffirmed the *Hope* decision in *Taylor v. Riojas*, 141 S.Ct. 52 (2020) (per curiam) (overturning application of QI based on lack of identical facts). The pertinent question in a QI analysis is whether the "violative nature" of particular conduct has been clearly established. *Patel v. Hall,* 849 F.3d 970, 980 (10th Cir. 2017). The Tenth Circuit has repeatedly counseled that "[w]e cannot find qualified immunity whenever we have a new fact pattern." *Casey*, 509 F.3d at

1284. Thus, it has adopted a "sliding scale" to determine when law is clearly established. *Casey*, 509 F.3d at 1284-85. "The more obviously egregious the conduct in light of the prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation." *Id*.; *see also Contreras on behalf of A.L. v. Dona Ana Cnty. Bd. of Cnty. Commissioners*, 965 F.3d 1114, 1135 (10th Cir. 2020) ("Until either this Court or the Supreme Court sounds the death knell for [the] sliding-scale approach, [the Tenth Circuit is] bound to apply it rather than merely pay lip service to it.") (Baldock, J., concurring and dissenting in part).

## **ARGUMENT**

### I.  **Defendants violated Plaintiff's Fourth Amendment rights by entering and searching his home without a warrant, consent, or an exigency.**

Defendants do not dispute that they entered and searched Plaintiff's home without a warrant or consent. Rather, they attempt to justify their conduct by arguing that an exigency existed. They assert that the standard for "an exigency is essentially one of reasonable belief." Doc. No. 16, p. 5. However, this statement grossly misrepresents the legal standard. The Tenth Circuit applies a two-prong analysis: whether (1) the officers have "an objectively reasonable basis to believe there is an immediate need to protect the lives or safety of themselves or others, and (2) "the manner and scope of the search is reasonable." *Najar*, 451 F.3d at 718.

Similar to *Cortez*, "Defendants have offered nothing, beyond innuendo or speculation, to establish objectively reasonable grounds of an emergency, i.e., an immediate need to protect their lives or others from serious injury or threatened injury." *Cortez*, 478 F.3d at 1124. "They have failed to articulate any specific facts that led them to

believe [Mr. Luethje] posed a threat to the officers or others." *See id*. at 1124. Under the test announced in *Najar*, Defendants failed on both prongs: there was no immediate need to protect the lives or safety of anyone, and the use of an off-leash canine was an unreasonable manner of entering the home – it caused harm instead of preventing.

Defendants attempt to justify their entry into Plaintiff's home by relying on *Walker v. Disner*, 50 Fed.Appx. 908 (10th Cir. 2002), an unpublished and nonbinding decision from over twenty years ago with very different facts. Specifically, *Walker* involved a domestic dispute between a husband and wife, where the wife obtained a restraining order to keep the husband out, had the locks to their apartment changed, and the husband broke the lock to enter the apartment. *Id*. at 909. After talking to the wife, a manager for the apartments called police and reported that the unwanted and prohibited person was inside the apartment. *Id*. The husband was arrested for violating a restraining order and charged with criminal mischief. *Id*. at 910.

First, the facts in *Walker* are dissimilar to Mr. Luethje's case. There was no restraining order restricting Mr. Luethje from his own home, nor was there any other apparent need for the protection of any other occupants of the home. Additionally, the police in *Walker* did not send an off-leash canine into the apartment to violently attack the first person it came in contact with. *Id*. Thus, not only was there no corresponding threat regarding a person who forced his way back into a DV situation, the scope and manner of the search in *Walker* was arguably reasonable. Defendants' conduct was divorced from what the situation called for because a canine cannot tell the difference between a suspect and an innocent bystander. Furthermore, this is the type of case where the officers could

surround the home and setup a perimeter in case anyone left or fled, while taking the time and opportunity to get a warrant. The law is clear: "when the officer has time to get a warrant, he must do so." *Lange v. California*, 141 S. Ct. 2011, 2025 (2021). Defendants had no information that a person inside the house needed emergency assistance, and the use of an off-leash/find-and-bite canine in a residence is antithetical to rendering emergency aid. The officers needlessly entered and harmed Mr. Luethje.

Second, the police in *Walker* were acting on specific information from a credible witness. 50 Fed.Appx. at 909. There, the reporting party was the apartment maintenance manager who was personally told by Mrs. Walker that she changed the locks and that Mr. Walker was not allowed in the apartment. *Id*. In fact, the maintenance manager personally encountered Mr. Walker forcing entry into the apartment, which appeared to be a crime. *Id*. By contrast, the 911 caller here had no specific knowledge related to Mr. Luethje, his home, who lived there, or any insight into the situation that occurred. He was not even able to provide a description of the suspect. He certainly could not say whether a crime occurred, and left the police to perform their own due-diligence.

Finally, to the extent Walker may be said to articulate a different standard regarding exigent circumstances, it is not representative of the current state of the law as it has evolved.[1] *See, e.g.*, *United States v. Cruz*, 977 F.3d 998, 1004 (10th Cir. 2020) ("[E]ven

---

[1] According to undersigned counsel's Westlaw search, in the twenty-two years since the two-page *Walker* opinion was decided, the Tenth Circuit has cited it exactly zero times. Similarly, the opinion itself cites no Tenth Circuit precedent related to exigencies. *Id*. Instead, the opinion passingly cites a First Circuit case for the notion that an exigency exists where there is probable cause to arrest a suspect for burglary. *Id*. at 910 (citing *United States v. Tibolt*, 72 F.3d 965, 970-71 (1st Cir. 1995)).

with probable cause, police officers may not enter a dwelling to make an arrest absent consent or exigent circumstances."); *Payton*, 445 U.S. at 587–88 ("[A warrantless entry to a home] is unconstitutional even when a felony has been committed and there is probable cause to believe that incriminating evidence will be found within."); *Cortez*, 478 F.3d at 1123-24 (exigent circumstances require "specially pressing or urgent law enforcement need").

Similarly, Defendants' reliance on the facts of *Najar* is misplaced. While "911 calls are the predominant means of communicating emergency situations," the Tenth Circuit has held that information transmitted by 911 call does not necessarily "justify a warrantless entry upon the arrival of law enforcement." *United States v. Chavez*, 643 F. Supp. 3d 1285, 1289 (D.N.M. 2022) (citing *Najar*, 451 F.3d at 719, 720 n.7). In *Najar*, an early morning 911 call was disconnected and each time dispatch called back, the call was answered but quickly disconnected without a word. 451 F.3d at 716-17. When police arrived at the home, they could see someone inside who initially refused to come to the door. *Id*. Because of the repeated 911 calls, which were immediately disconnected by someone at the home, the court held that a reasonable person could be concerned that someone was trying to prevent communication with safety officials, not merely avoid it. *Id*. at 720. These facts are far different from the case at bar.

In other words, "the key factual differences in [*Walker* and *Najar*] do not support Defendants' assertion that qualified immunity applies here." *See Hartsell v. Cnty. of San Diego*, No. 16CV1094-LAB-LL, 2019 WL 291965, *14 (S.D. Cal. Jan. 23, 2019), *report and recommendation adopted*, No. 16CV1094-LAB (JMA), 2019 WL 1035932 (S.D. Cal. Mar.

5, 2019), *aff'd*, 802 F. App'x 295 (9th Cir. 2020). Based on the facts known to Defendants, they had insufficient information to reasonably believe that someone inside the house required immediate aid. *See, e.g.*, *McInerney v. King*, 791 F.3d 1224, 1233 (10th Cir. 2015). Furthermore, even if they did, sending a canine into the home to bite the first person it came in contact with would not have served this purpose.

### a. Prior controlling precedent makes clear that law enforcement officials violate the Fourth Amendment when they enter and search a home without a warrant, consent, or an exigency.

The court's analysis in *McInerney* illustrates well why the police in this case lacked justification. In *McInerney*, the defendant went to the plaintiff's home to serve her with a summons for harassment. 791 F.3d at 1227. The defendant officer observed two open windows, with one missing a screen, and a third window with a piece of window trim hanging from it. *Id.* The front screen door was open with a broken shock arm, and the front door was open about six inches. *Id*. The garage door was also open, and belongings were strewn about inside. *Id*. The officer did not attempt to contact the plaintiff by phone. *Id*. at 1228. After approximately 26 minutes of arriving on the scene, the officer, with backup, knocked and announced their presence several times, however, no one came to the door. *Id*. The officers entered the home with guns drawn and soon found the plaintiff partially clothed in her bed, outraged. *Id*. The court held, "[i]n any event, none of these facts establish objectively reasonable grounds of an emergency, i.e., an immediate need to protect [the officers'] lives or others from serious injury or threatened injury." *Id*. at 1233 (quoting *Cortez*, 478 F.3d at 1124). Similarly, the Defendants here "cannot justify [their] entry by a need to protect [themselves] where no emergency existed to justify [Defendant]'s entry." *Id*. at 1235.

"[I]t was clearly established as of July 26, 2009, that exigent circumstances must involve an urgent law enforcement need." *McInerney*, 791 F.3d at 1237 (citing *Cortez*). "[T]he cases in which [courts] have concluded that exigent circumstances justified a warrantless entry all involved facts and circumstances supporting an officer's reasonable belief that someone inside a home was in immediate danger." *Id*. "These types of emergency situations are completely missing from [Mr. Luethje's] case." *See id*. "Simply put, [Defendants] had fair notice that [their] conduct in entering [Mr. Luethje]'s house without a warrant [or exigency] was unlawful." *McInerney*, 791 F.3d at 1238.

## II. Defendants lacked even arguable probable cause that a crime was committed when the canine seized Plaintiff.

A person is "seized" within the meaning of the Fourth Amendment when "a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall,* 446 U.S. 544, 554 (1980). This is clear when firearms, handcuffs or other forceful techniques are used. *See Ward v. City of Hobbs*, 389 F.Supp.3d 991, 1056-58 (D. N.M. 2019); *Cortez*, 478 F.3d at 1117 (handcuffing, mirandizing, and moving suspect to a confined space where he was not free to leave is an arrest). Since it has been clear for decades that a lawful arrest requires probable cause, courts in the Tenth Circuit evaluate whether officers are entitled to QI by asking "whether there was arguable probable cause." *Mglej v. Gardner*, 974 F.3d 1151, 1164 (10th Cir. 2020). "Arguable probable cause is another way of saying that the officers' conclusions rest on an objectively reasonable, even if mistaken, belief that probable cause exists." *Stonecipher*, 759 F.3d at 1141. An unreasonable mistake of fact cannot furnish probable cause. *Maresca,* 804 F.3d at 1310. An officer's unreasonable belief that criminal conduct has occurred because of a mistake

that could be corrected with verification, common sense, or application of instruction/training will not excuse an officer's misguided judgment. *Id.* at 1311. A police officer may not close her or his eyes to facts that would help clarify the circumstances. *Baptiste v. JC Penney Co.,* 147 F.3d 1252, 1257 (10th Cir. 1998) (citing *BeVier,* 806 F.2d at 128).

Here, Plaintiff was arrested when the canine bit him in his bed. A person in his situation would have reasonably believed that they were "not free to leave" while being bitten. At that time, Defendants lacked sufficient information that any crime had been committed. When Defendants decided to deploy the canine into Plaintiff's home, the facts known to them were that a non-descript male broke the front window of a home and then ran away.[2] Upon arrival, they observed the broken window and heard a voice inside the home. Defendants did not see or hear any signs of violence or pleas for help. Police did not have sufficient evidence to believe a crime occurred, or that occupants inside had necessarily committed it; they should have done more to investigate and/or clarify before seizing Mr. Luethje.

### a. Defendants lacked arguable probable cause to arrest Plaintiff for burglary.

Defendants did not have reasonably trustworthy information indicating that the unidentified male who broke the window and ran away was inside the home or that he was Mr. Luethje. The reason for the absence of information is self-evident: Defendants failed to take rudimentary steps to investigate, such as looking up and calling the residents of the

---

[2] And if the court considers the 911 call exhibit, it was also reported that the man looked like he may have simply forgotten his keys.

home, making meaningful attempts to communicate with those inside, or interviewing the witnesses instead of relying on general information transmitted earlier. Officers are required to conduct an adequate investigation involving the collection and review of basic fundamental evidence that is readily available to them before invoking the power of warrantless arrest and detention. *Romero*, 45 F.3d at 1476-77, n. 2 (10th Cir. 1995) (collecting cases). Reasonable avenues of investigation must be pursued, especially when it is unclear whether a crime has even taken place. *Cortez,* 478 F.3d at 1116. Here, Defendants went straight to significant force instead of gathering information. Defendants certainly lacked trustworthy and reliable information indicating that the person inside had the "intent to commit therein a crime against another person or property." *See* C.R.S. § 18-4-203(1).[3] They did not see or hear any signs of violence or a crime being committed. Thus, there was no arguable probable cause to arrest Plaintiff for burglary.

> **b.  Defendants lacked arguable probable cause to arrest Plaintiff for criminal mischief.**

Defendants assert that it is reasonable to infer criminal intent from a resident locked out in the cold breaking a window because the police lacked proof that he was the owner and could assume that he might have damaged the property of another. Doc. 16 at 12 ("they had *no information* that Plaintiff was the sole owner"). This argument is problematic for a variety of reasons. First, Defendants ask this Court to make inferences in their favor about "criminal intent" at the motion to dismiss stage, which runs counter to the well-established

---

[3] If the Court decides to consider the 911 call, this argument is even stronger because the caller reported twice that the unidentified male may have forgotten his keys and broke the window to get inside (although the caller did not observe the male enter the home).

principle that any inference made be in favor of the non-movant. *See Sanchez,* 810 F.3d at 754. Second, Defendants' concession that "they had *no information* that Plaintiff was the sole owner" defeats their own probable cause argument. Doc. 16 at 12. The absence of information cannot form the basis for "reasonably trustworthy information." *See Cortez*, 478 F.3d at 1116. Defendants never even charged Plaintiff with criminal mischief, likely because they recognized the deficiencies with the arguments now being advanced on their behalf. Third, if the court considers the 911 call, which Defendants attached to their Motion to Dismiss, it will see that the call includes multiple comments from the neighbor indicating that the person may have just forgotten their keys. That information should have been further explored to ascertain the truth of whether a crime had been committed. *Cortez,* 478 F.3d at 1116. Based on this information, it was certainly unreasonable for Defendants to *assume* criminal intent or activity.

**III.   Defendants violated Plaintiff's clearly established constitutional right to be free of excessive force.**

### a. Constitutional Violation

Under the circumstances in this case, a reasonable officer in Defendants' position would have known it was excessive force to release a police canine off-leash into a home to bite the first person it finds, particularly when there was no pending threat or resistance.

### i. *Nature and Quality of the Intrusion*

The excessive force analysis must account for the risk of serious injury inherent to the use of police canines. *See, e.g., Winston v. Lee*, 470 U.S. 753,761 (1985) ("A crucial factor in analyzing the magnitude of the [Fourth Amendment seizure] is the extent to which the procedure may threaten the safety or health of the individual."). Use of an off-leash

canine trained to find and bite is more significant than other uses of force in two regards: (1) the lack of control and (2) the potential for serious injury. *See, e.g.*, *Koistra v. Cnty. of San Diego*, 310 F. Supp. 3d 1066, 1074 (S.D. Cal. 2018); *Robinette v. Barnes*, 854 F.2d 909, 911 (6th Cir. 1988); *Chew v. Gates*, 27 F.3d 1432, 1436, 1441 (9th Cir. 1994).

In Mr. Luethje's case, while asleep in his bed, he awoke in the night to what can aptly be described as a nightmare scenario. Wearing nothing but sweat pants, a large police canine repeatedly sunk its teeth into his hand, abdomen, forearm, and bicep. The canine dragged him from his bed to the ground, where it continued to pull and jerk his bicep, like a chew toy. The level of intrusion here was substantial; "[t]herefore, the government interest at stake must be substantial to justify the use of substantial force." *Olvera v. City of Modesto*, 38 F. Supp. 3d 1162, 1168 (E.D. Cal. 2014).

### b. Graham Analysis - Government's Interest at Stake

Applying the three factors identified in *Graham* demonstrates that Defendant Kyle's actions were objectively unreasonable. *See Mullins v. City of Colorado Springs*, 575 F.Supp.3d 1371 (D. Colo. Dec. 15, 2021); *Vette v. K-9 Unit Deputy Sanders,* 989 F.3d 1154, 1170 (10th Cir. 2021).

### i. Severity of the Crime

Defendants did not have arguable probable cause to believe Mr. Luethje committed any crime. They had no evidence of an unlawful entry and no evidence of a crime being committed inside the house. Additionally, Defendants had no evidence that the house was jointly owned or owned by another person, which Defendants concede. Doc. 16 at 12 ("they had *no information* that Plaintiff was the sole owner") (emphasis in original). Thus,

Defendants could not have reasonably believed a crime was in progress or that Plaintiff committed criminal mischief by breaking the window of his own residence. Thus, the first *Graham* factor weighs heavily against the use of significant force.

### ii. The Immediacy of the Threat

The most important aspect of the excessive force inquiry is "whether the officers were in danger at the precise moment that they used force." *Thomson v. Salt Lake Cty.*, 584 F.3d 1304, 1315 (10th Cir. 2009); *see also Sanchez v. Baker*, 457 F.Supp.3d 1143, 1154-55 (D.N.M. 2020) (finding excessive force where suspect "posed no immediate threat of danger that necessitated the release of the police dog"). Here, there was no immediate threat to justify substantial force. Defendants did not have information supporting that a person inside the house had or was threatening them or anyone else. Plaintiff was in his bed sleeping. Therefore, this factor weighs heavily in Mr. Luethje's favor. *See Chew v. Gates*, 27 F.3d 1432, 1436, 1442-43 (9th Cir. 1994) (finding the force excessive due to the absence of a threat); *Cook v. City of Albuquerque*, 639 F. Supp. 3d 1185, 1199 (D.N.M. 2022), *appeal dismissed sub nom. Cook v. McPeek*, No. 22-2148, 2023 WL 3829880 (10th Cir. Jan. 25, 2023) (holding it is clearly established "that an officer who faces no immediate threat cannot deploy a [police serve dog] off-leash").

### iii. Resisting or Fleeing Arrest

The third *Graham* factor looks at whether the suspect was actively resisting or fleeing arrest. As a starting point, a person must reasonably believe that they are under arrest before they can be reasonably suspected of resisting or fleeing arrest. *See Mendenhall*, 446 U.S. at 554. Obviously, at least one officer would need to be present with and/or

18

otherwise reasonably communicating with a suspect in order for the suspect to understand that officers are attempting to make an arrest. These fundamental principles contravene Defendants' specious assertion that they had enough because someone said "a suspect [was] seen fleeing an apparent burglary." Doc. 16 at 14. "It is not objectively reasonable to ignore specific facts as they develop (which contradict the need for [significant force]), in favor of prior general information about a suspect." *Cavanaugh v. Woods*, 625 F.3d 661, 666 (10th Cir. 2010). Additionally, the Amended Complaint makes no mention of someone observing a suspect "fleeing an apparent burglary." This is Defendants' characterization of the evidence, and it is false. The neighbor reported seeing an unidentified male break a window and then run away. Thus, neither the neighbor nor Defendants had reason to believe a burglary was in progress (running away is contrary to entering and committing a crime inside). Moreover, the unidentified male ran away from the broken window *before police arrived on scene*. It defies logic for Defendants to argue that Plaintiff actively resisted/fled arrest before he was ever contacted by police. *Id.* As the Complaint clearly alleges, Plaintiff did not attempt to resist or flee before or when the canine bit him, nor when Defendants handcuffed him. Thus, the third *Graham* factor weighs heavily against the use of significant force.

Where all three *Graham* factors weigh in Plaintiff's favor, he asserts a colorable violation. *See Mglej v. Gardner*, 974 F.3d 1151 (10th Cir. 2020) (only "minimal force" was objectively justified where "[t]here [was] no evidence that [the suspect] was resisting or trying to evade arrest"), *cert. denied*, 2021 WL 1520808 (U.S. Apr. 19, 2021).

### c. Additional Factors – The Totality of the Circumstances

Beyond the *Graham* factors, the absence of an adequate warning further illustrates the unreasonableness of the force employed. *See, e.g.*, *Smith v. City of Albuquerque*, 2002 WL 35649607, *4 (D.N.M. Oct. 8, 2002); *Kuha*, 365 F.3d 590 at 598 ("The presence or absence of a warning is a critical fact in virtually every excessive force case involving a police dog."); *Trujillo v. City of Lakewood, Colo.*, No. 08-cv-00149-WDM-CBS, 2009 WL 3260724, at *3 (D. Colo. Oct. 9, 2009) (denying QI in light of disputed facts as to whether officer released dog without warnings); *Casey,* 509 F.3d at 1286 ("a large amount of force immediately and without warning makes the force "especially troubling.").

### d.  Clearly Established Law

It is clearly established in the Tenth Circuit that a police officer may not use significant force on a non-violent, non-resisting suspect who is accused of only minor, non-violent crimes. *Casey*, 509 F.3d at 1282–84. This law is clearly established regardless of the specific force-related-tool employed. *See Mullins*, 575 F.Supp.3d at 1371 (the lack of canine-specific caselaw is not dispositive, controlling law regarding other types of force clarifies the scope of right regarding reasonableness of police force) (citing *McCowan v. Morales*, 945 F.3d 1276, 1287 (10th Cir. 2019)). "For purposes of the Constitution, it matters not the manner in which the force is applied, or the form that it takes: excessive force is excessive force." *Mullins*, 575 F.Supp.3d at 1371; *see also Cooper*, 844 F.3d at 525 ("Lawfulness of force… does not depend on the precise instrument used to apply it. Qualified immunity will not protect officers who apply excessive and unreasonably force merely because their means of applying it are novel.").

Furthermore, "it is clearly established in the Tenth Circuit that there are limits to the reasonable amount of force an officer can use, whatever form or manner that force may take." *Mullins*, 575 F.Supp.3d at 1371 (collecting cases). "[T]he Fourth Amendment prohibits the use of force without legitimate justification, *as when a subject poses no threat* or has been subdued." *Vette,* 989 F.3d at 1170 (collecting cases) (emphasis added). In *Mullins*, the court denied the defendant's motion to dismiss in substantially similar, although less egregious, circumstances. 575 F. Supp. 3d at 1372. There, a large team of police officers arrived at the plaintiff's home with a warrant for his arrest. *Id*. at 1365. Without issuing an adequate warning, the defendant officers unleashed the canine and sent it into the home to find and bite the plaintiff. *Id*. Unaware of the preceding events, the plaintiff stepped out of the shower and was violently attacked by the canine. *Id*. In response to the plaintiff's screams, the officers gravitated to an upstairs bathroom, where they found the plaintiff had been bitten while naked, clearly unarmed, and not resisting or threatening. *Id*. The court held that because the second and third *Graham* factors weighed heavily in the plaintiff's favor, and the crimes that he was being arrested for were nonviolent, the defendants were not entitled to QI. *Id*. at 1369 (relying on *Vette*, *McCowan*, *McCoy*, *Morris*, *Cavanaugh*, *Casey*, *Katterman*). Similar to *Mullins*, the second and third *Graham* factors weigh heavily in Mr. Luethje's favor. However, Mr. Luethje's case is even stronger because Defendants did not reasonably suspect him of any crime – whereas, the plaintiff in *Mullins* had a warrant for his arrest.

Furthermore, *Mullins* is not an outlier. It is one of many cases within and beyond the Tenth Circuit that show the prevailing weight of authority clearly establishing that force

should not be used without a threat or active resistance. *See, e.g.*, *Cook v. City of Albuquerque*, 639 F. Supp. 3d 1185, 1202 (D.N.M. 2022) (finding "that releasing a [police service dog] off-leash into a residential neighborhood, without warning, is a clearly established constitutional violation if no imminent threat exists."); *Pettaway v. Barber*, No. 2:19-CV-008-ECM, 2023 WL 1422457, at \*10 (M.D. Ala. Jan. 31, 2023) (holding that "[a] reasonable officer would not need prior case law to know that sending an off-leash canine into a surrounded home before adequately communicating with a solitary suspect or providing that suspect an opportunity to respond, in violation of department policy, constitutes excessive force.") *reconsideration denied*, No. 2:19-CV-008-ECM, 2023 WL 2347062 (M.D. Ala. Mar. 3, 2023); *Brown v. Whitman,* 651 F. Supp. 2d 1216, 1227 (D. Colo. 2009) (excessive force where officers released dog to bite plaintiff who emerged from sitting in a car and could have been seen with a flashlight if officers had used it); *Katterman v. Salt Lake Cty.*, No. 2:13-CV-1122-EJF, 2017 WL 1207518, at \*6-8 (D. Utah Mar. 31, 2017) (clearly established canine force where suspect had not fled or resisted arrest, and no evidence suggested he was armed); *Trujillo,* 2009 WL 3260724, at \*4 (excessive force clearly established where canine bit "a subdued individual posing no obvious threat"); *Erickson*, 489 F.Supp.3d at 1199-1203 (excessive force and conspiracy claims substantiated where officers enacted plan to release canine into home to bite after subject failed to respond to text message warning); *Priester v. City of Riviera Beach*, 208 F.3d 919, 927-28 (11th Cir. 2000) (excessive canine force where suspect of non-violent crime was lying down in a canal and presented no threat and did not attempt to flee or resist); *Campbell v. City of Springboro*, 700 F.3d 779, 789 (6th Cir. 2012) (QI denied for officers involved in

dog attack on two suspects "who were not actively fleeing and who, because of proximity, showed no ability to evade police custody."); *Chew v. Gates,* 27 F.3d 1432, 1436, 1443 (9th Cir. 1994) (QI denied to canine handler where dog bit man who could not move or present a threat and where the situation did not force the officers to make 'split-second judgments'); *Thornton v. City of Macon*, 132 F.3d 1395, 1400 (11th Cir. 1998) (concluding "officers were not justified in using any force" where suspect was charged with felony obstruction, posed no immediate threat, and did not actively resist); *Graves v. Malone*, 810 F.Appx. 414, 423 (6th Cir. 2020) (no reasonable officer would find reasonable threat from suspect found "unarmed, silent, and constrained by position.").

Defendants' reliance on *Martinez v. Jenneiahn* is misplaced. Doc. 16 at 13-14; *see also Martinez v. Jenneiahn*, No. 22-1219, 2023 WL 4482404 (10th Cir. July. 12, 2023). Unlike Mr. Luethje's case, the police in *Martinez* knew who they were searching for and why. *Martinez*, 2023 WL 4482404, at *1. Police knew that the suspect was wanted for felony crimes and alleged that he barricaded himself behind a locked door and may have had a weapon. *Id.* Moreover, the plaintiff was seized in a place he had no reasonable expectation of privacy, an outdoor closet of an apartment building that did not belong to him. *Id*. Lastly, when the police opened the door, the handler kept the canine on leash during the deployment for control. *Id.* "There is a vast difference between an officer releasing a dog off a leash knowing with a good degree of certainty that it will find and bite its target and an officer exercising substantial control over a leashed animal with the expectation of being able to prevent any injury." *Melgar ex rel. Melgar v. Greene*, 593 F.3d 348, 357-58 (4th Cir. 2010). Mr. Luethje's case exemplifies this point and illustrates why Defendants' comparison

to *Martinez* is misguided. *See, e.g.*, *Mancini v. City of Indianapolis*, No. 116CV02048TWPMJD, 2017 WL 4250112, at \*5 (S.D. Ind. Sept. 26, 2017) ("The alleged excessive force consists of an officer … releasing a police canine, specifically trained to violently seize the first person that it sees in the space in which he was deployed, in pursuit of a minor felon, inside of a fenced residential yard; circumstances where innocent bystanders could reasonably be expected to be present.").

"Indeed, the force used by Defendant [Kyle] against [Mr. Luethje] was more severe than the force used in numerous Tenth Circuit cases that found excessive force under similar circumstances." *See Mullins*, 575 F.Supp.3d at 1372. "The use of clearly excessive force is not protected by QI merely because Defendant Officers' means of applying it are novel." *Id*. This Court should deny qualified immunity.

**IV.   Defendant Kelly had a duty to intervene to stop multiple clearly established violations from occurring.**

Lastly, Mr. Luethje has plausibly alleged a failure-to-intervene claim against Defendant Kelly. An officer can be liable for failing to intervene when he was present at the scene, witnessed the constitutional violation, and had a reasonable opportunity to intervene to stop the force but failed to do so. *See, Mick v. Brewer*, 76 F.3d 1127, 1136 (10th Cir.1996); *see also Erickson v. Lakewood*, 489 F.Supp.3d 1192, 1199-1201 (D. Colo. 2020) (citing *Mick*, 76 F.3d at 1136). The duty to intervene applies to the use of a police canine. *See, e.g., Erickson*, 489 F.Supp.3d at 1199-1201; *Savannah v. Collins*, 547 F. App'x 874, 876-77 (10th Cir. 2013) (holding that a failure to intervene theory can apply to the use of a canine but that plaintiff had not adequately pleaded such a failure).

Defendant Kelly failed to intervene to prevent (1) the unlawful entry/search, (2)

unlawful arrest, and (3) excessive force. First, Defendant Kelly knew it was reported that an unidentified male broke a window and ran away without entering the home. Doc. 5 at ¶82. Upon arrival, Defendant Kelly did not see or hear any signs of violence; he had no reason to believe there was an exigency permitting entry into the home. Additionally, Defendant Kelly did not have reasonably trustworthy information that a crime had occurred. An investigation would have been necessary before reaching such a conclusion, which Defendants did not do. Lastly, Defendant Kelly had absolutely no information justifying the use of a police canine to find and bite whoever it found in the house. Without evidence of an exigency, Defendant Kelly should have objected to the entry of Plaintiff's home, and especially to the use of the canine to find and bite Plaintiff. Despite the obvious lack of justification, Defendant Kelly did not object to the plan or otherwise attempt to stop the canine or officers from entering the home. "Had he taken even a moment to consider the clearly established law of this circuit, he would not have followed the lead of [Defendant Kyle] in entering [Plaintiff's home]." *See McInerney*, 791 F.3d at 1236 (citation omitted).[4]

**WHEREFORE,** for the reasons set forth herein, Defendants' Motion to Dismiss should be denied.

Respectfully submitted this 29th day of March, 2024.

Civil Rights Litigation Group, PLLC
*s/    Raymond K. Bryant*
*s/    Zachary L. Shiffler*
1543 Champa St., Suite 400
Denver, CO 80202

---

[4] Although *McInerney* did not involve a failure-to-intervene claim, the facts and legal pronouncements in that case put Defendant Kelly on notice that he could not merely follow along with the plan to use a canine to enter Plaintiff's home and seize him.

P:  720-515-6165
F:  720-465-1975
Raymond@rightslitigation.com
Zach@rightslitigation.com
*Attorneys for Plaintiff*

**Certificate of Service**

I hereby certify that on this 29th day of March, 2024, a true and correct copy of
**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS** was filed via
electronically via ECF and is expected to be served on the following:


S. Kelly Dunaway
W. Casey Brown
Douglas County Attorney's Office
100 Third Street
Castle Rock, CO 80104
T: 303-660-7414
kdunnaway@douglas.co.us
wbrown@douglas.co.us
*Attorneys for Defendant*


                                                    **s/ Raymond K. Bryant**