IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Charlotte N. Sweeney

Civil Action No. 23-cv-03054-CNS-MEH

TYLER LUETHJE,

    Plaintiff,

v.

TRAVIS KYLE,
SCOTT KELLY,

    Defendants.

## ORDER

Defendants move to dismiss Plaintiff Tyler Luethje's Amended Complaint on qualified immunity grounds. ECF No. 16. For the reasons below, the Court denies Defendants' motion.

### I. BACKGROUND[1]

This action arises from an alleged unreasonable use of force at Plaintiff Tyler Luethje's home in Highlands Ranch, Colorado. *See generally* ECF No. 5 (Am. Compl.). On February 11, 2022, at 6:40 p.m. on a "freezing cold" evening, Deputies Travis Kyle and Scott Kelly of the Douglas County Sheriff's Office, responded to a 911 call reporting

---

[1] The following facts are drawn from Plaintiff's Amended Complaint and Jury Demand. ECF No. 5. For purposes of this motion, the Court accepts as true, and views in the light most favorable to Plaintiff, all factual allegations contained in the amended complaint. *See Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009).

1

an apparent burglary in a Highlands Ranch home. *Id.*, ¶ 15. The caller reported that a man broke the *front window* of a home and then r*an away from the residence without entering*. *Id.*

When Deputies Kyle and Kelly arrived, they observed a broken window at the front of the residence. *Id.*, ¶ 20. They also "heard someone speaking from inside the house, but Defendants did not hear any signs of violence or pleas for help." *Id.*, ¶ 76. Deputy Kyle "removed the screen to the window and destroyed the rest of the glass." *Id.*, ¶ 21. Then, without knocking or announcing his intentions, he released his unleashed police canine through the window to find the suspected burglar. *Id.*, ¶ 22 (alleging that "Defendant Kyle ordered his canine to find and bite whomever it found inside the residence, regardless of whether the person(s) inside were lawfully at the residence and regardless of whether the canine found a child or adult"). After 30 seconds passed, the canine located Mr. Luethje sleeping in his bed. *Id.*, ¶ 24. He was the only person in the home. *Id.* The canine immediately started biting Mr. Luethje in the hands, abdomen, and arm, causing him to scream in pain. *Id.*, ¶¶ 24–25.

Deputies Kyle and Kelly then entered the home, searched for the dog and suspect, and found Mr. Luethje in his bedroom with the dog latched onto his arm. *Id.*, ¶¶ 27–28. With the dog still latched, Mr. Luethje told the deputies repeatedly that he lived there. *Id.* (explaining that he screamed, "I live here! I live here! I live here!"). In response to the deputies' questions, Mr. Luethje confirmed that he was home alone, and that he broke the window to his own home. *Id.*, ¶¶ 31–32. Still, Defendants put Mr. Luethje in handcuffs,

placed him in the back of a patrol vehicle, and when EMS arrived, transferred him to a gurney.[2] *Id.*, ¶¶ 35–39.

The deputies took possession of his driver's license and confirmed that the address on his license matched the location of the incident. *Id.*, ¶¶ 39–40. EMS eventually transported Mr. Luethje to the hospital in an ambulance to treat his wounds. *Id.*, ¶ 41. While there, "[d]espite confirming that Mr. Luethje lived at the residence and that no crime had occurred, Defendants re-entered Mr. Luethje's home and conducted a thorough search." *Id.*, ¶ 42. They found no evidence of a crime. *Id.*, ¶ 43.

Mr. Luethje initiated this action on November 17, 2023, alleging both federal and state constitutional violations for unlawful entry and search of the home, unlawful arrest, excessive force against Deputy Kyle, and failure to intervene against Deputy Kelly. *See generally* ECF No 1; ECF No. 5, ¶¶ 49–98.

## II.  LEGAL STANDARDS

### A.    Federal Rule of Civil Procedure 12(b)(6)

"To survive a [Federal Rule of Civil Procedure 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Walker v. Mohiuddin*, 947 F.3d 1244, 1248–49 (10th Cir. 2020) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Cummings v. Dean*, 913 F.3d 1227, 1238

---

[2] Plaintiff does not allege whether Defendants or the EMS personnel transferred him to the gurney. Nor does he allege when the EMS personnel arrived or when they transported him to the hospital.

(10th Cir. 2019) (internal quotation marks omitted). In making this determination, the "court accepts as true all well pleaded factual allegations in [the] complaint and views those allegations in the light most favorable to the plaintiff." *Straub v. BNSF Ry. Co.*, 909 F.3d 1280, 1287 (10th Cir. 2018). However, "legal conclusions" contained in the complaint are not entitled to the assumption of truth. *See Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011). The standard, however, remains a liberal pleading standard, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (quotation omitted).

### B.   Qualified Immunity

The qualified immunity doctrine shields government officials performing discretionary functions from liability for civil damages insofar as their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The doctrine "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

When a defendant raises the defense of qualified immunity, a "plaintiff carries a two-part burden to show: (1) that the defendant's actions violated a federal constitutional or statutory right, and if so, (2) that the right was clearly established at the time of the defendant's unlawful conduct." *T.D. v. Patton*, 868 F.3d 1209, 1220 (10th Cir. 2017)

(internal quotations omitted). In its discretion, the Court may begin its analysis with either prong. *Cox v. Wilson*, 971 F.3d 1159, 1171 (10th Cir. 2020).

To defeat a qualified immunity challenge under Rule 12(b)(6), a plaintiff "must allege facts sufficient to show (assuming they are true) that the defendants plausibly violated their constitutional rights." *Robbins v. Oklahoma*, 519 F.3d 1242, 1249 (10th Cir. 2008). "The record must clearly demonstrate the plaintiff has satisfied his heavy two-part burden; otherwise, the defendants are entitled to qualified immunity." *Felders ex rel. Smedley v. Malcom*, 755 F.3d 870, 877–78 (10th Cir. 2014) (citation and quotations omitted). When a plaintiff fails to satisfy either prong, the Court must grant qualified immunity. *Id.*

### III.  ANALYSIS

Defendants move to dismiss each of Plaintiff's claims on qualified immunity grounds. ECF No. 16. The Court addresses each claim below in turn, ultimately determining that dismissal is not warranted for any claim.

**C.  Claim One: Unlawful Search/Entry of the Home[3]**

   1.  *"Constitutional Violation" Prong*

Warrantless searches of a home are presumptively unreasonable, *Soza v. Demsich*, 13 F.4th 1094, 1104 (10th Cir. 2021), but the Supreme Court has recognized certain exceptions. "One exigency obviating the requirement of a warrant is the need to assist persons who are seriously injured or threatened with such injury. The need to

---

[3] Plaintiff appears to allege two unlawful entries and searches. The first involves releasing the police dog into the home to search for Plaintiff followed by Defendants' immediate entry and search of the home. The second involves Defendants' re-entry and "thorough search" of the home after EMS personnel transported Mr. Luethje to the hospital. In their motion, Defendants only address the first entry and search.

protect or preserve life or avoid serious injury is justification for what would be otherwise illegal absent an exigency or emergency." *Brigham City, Utah v. Stuart,* 547 U.S. 398, 403 (2006) (internal quotation marks omitted). The Tenth Circuit has held that exigent circumstances "exist when: (1) the law enforcement officers have objectively reasonable grounds to believe that there is an immediate need to protect their lives or others, and (2) 'the manner and scope of the search is reasonable.'" *McInerney v. King*, 791 F.3d 1224, 1231 (10th Cir. 2015) (quoting *Cortez v. McCauley,* 478 F.3d 1108, 1124 (10th Cir. 2007) (en banc)). Reasonable belief is evaluated "based on the realities of the situation presented by the record from the viewpoint of prudent, cautious, and trained officers." *Id.* at 1232 (quoting *United States v. Gambino–Zavala,* 539 F.3d 1221, 1225 (10th Cir. 2008)). Defendants bear the burden of demonstrating the existence of exigent circumstances. *Id.* at 1231 (citing *Mascorro v. Billings,* 656 F.3d 1198, 1205 (10th Cir. 2011)).

Defendants acknowledge that they entered the home without a warrant. ECF No. 16 at 5. But they argue that the entry and search were lawful because they suspected a burglary in progress, and the exigencies of the situation created a compelling need for action without time to secure a warrant. *Id.* The Court is not convinced.

         *a.*      *Exigent Circumstances: Immediate Need to Protect Others*

Defendants rely on two cases to support their position: *Walker v. Disner*, 50 F. App'x. 908 (10th Cir. 2002) and *U.S. v. Najar*, 451 F.3d 710 (10th Cir. 2006). The Court finds the facts of these two cases easily distinguishable.

*Walker* involved a domestic dispute between a husband and wife. 50 F. App'x. at 909. The wife obtained a restraining order to keep the husband out of the house, going so far as changing the locks on their apartment. *Id.* Still, the husband returned to the apartment, manipulated the locks on the door, and entered the apartment. *Id.* The maintenance manager observed Mr. Walker's conduct and called the police. *Id.* Once onsite, the police knocked on the door *twice* before forcibly entering the apartment. *Id.* They briefly searched the apartment and arrested the husband for violating a restraining order. *Id.* at 909–10. The Tenth Circuit found Officer Disner's conduct reasonable, and that entry into the apartment was "lawful pursuant to the emergency exception to the warrant requirement." *Id.* at 910. The panel noted that Mr. Walker admitted that he manipulated the locks and ignored the officers' initial knock. *Id.*

Unlike in *Walker*—where Officer Disner knew that Mr. Walker was in the home, and that Mr. Walker's wife had a restraining order against him—here, there was no information available to Defendants to suggest that someone else was in the home and needed immediate assistance. Defendants do not argue that they heard any pleas for help or observed any signs of violence. And the 911 caller reported that the suspected burglar broke the front window and then fled. ECF No. 5, ¶¶ 1, 15, 53. *Walker* is plainly distinguishable.

*Najar* involved an early morning 911 call. 451 F.3d at 712. Upon answering the call, the 911 dispatcher was met with silence and then a disconnect. *Id.* The dispatcher called back several times, but each time his call was answered and quickly disconnected without a word. *Id.* The dispatcher asked officers to investigate. *Id.* When police arrived at the

7

mobile home, the officers "knocked on the door and announced their presence and purpose." *Id.* The officers could see and hear someone inside, but the person would not respond to the officers. *Id.* Eventually Mr. Najar came to the door, denied making the 911 call, and said that he was home alone. *Id.* Fearing that the 911 caller was inside and possibly injured, the officers entered the home over Mr. Najar's objections where they discovered an uninjured woman. *Id.* They observed a firearm in plain sight and arrested Mr. Najar for being a felon in possession of a firearm. *Id.* Given the totality of the circumstances, the court found that the officers had reasonable grounds to believe that someone inside the trailer may have needed emergency aid and that immediate action was required. *Id.* at 720.

The *Najar* officers attempted to contact the occupant in the home but did not receive an answer. And they had reasonable concerns that someone inside (the 911 caller) may have been injured. Here, there is no indication that Defendants had any information that another person inside the home needed immediate assistance. As alleged, viewing the facts in the light most favorable to Plaintiff, Defendants did not have reasonable grounds to believe that someone inside the home may have needed emergency aid and that immediate action was required. *McInerney*, 791 F.3d at 1232.

b.   *Exigent Circumstances: Scope and Manner of Search*

Plaintiff has also plausibly alleged that the manner and scope of Defendants' entry and search of Plaintiff's home was unreasonable. Defendants failed to exercise any restraint prior to releasing the dog and entering the home; they made no attempt to knock on the door or ring the doorbell before releasing the police canine into the home and

8

entering shortly after. ECF No. 5, ¶¶ 21–28. Instead, they released the canine into a private residence at approximately 7:00 p.m. where it could have bitten (and, in fact, did bite) a resident of the home. *Id.*, ¶ 22 ("Defendant Kyle ordered his canine to find and bite whomever it found inside the residence, regardless of whether the person(s) inside were lawfully at the residence and regardless of whether the canine found a child or adult."); *id.*, ¶ 23 ("The canine was not on a leash while inside the home, nor was it supervised by Defendant Kyle or any other law enforcement officer."). They then entered immediately after and performed their search. *Id.*, ¶¶ 27–28.

As explained above, Defendants' conduct in this case is distinguishable from the officers' conduct in *Najar* and *Walker*. The officers in those cases attempted to contact the occupants prior to entering. In *Najar*, the Tenth Circuit even commended the officers' "repeated and increasingly vigorous attempts to make contact" with the suspect prior to entering Mr. Najar's home without a warrant. *Id.* at 719 ("We applaud their restraint and circumspection."). Deputies Kyle and Kelly, however, did not announce their presence; nor did they ring the doorbell or knock loudly on the front door.

Defendants suggest in their reply that they did make an announcement. "In 911/dispatch audio, a Deputy is heard stating, 'we're going to start making announcements and see if we can get him to come out.'" ECF No. 25 at 8.[4] Based on the

---

[4] Defendants include a Vimeo link to the 911 audio in their motion and ask that the Court consider it without converting their motion to dismiss into a summary judgment motion. ECF No. 16 at 2 n.1. In ruling on a motion to dismiss, in addition to the allegations in a complaint, the Court "may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002). Neither party challenges the authenticity of the 911 recording, but they disagree whether the 911 call is central to Plaintiff's claims. The Court finds that the recording is sufficiently central to Plaintiff's claims. Indeed, the

9

brief record before the Court, this argument is misplaced. First, the audio does not say that the deputies "made" announcements; the audio says that the deputies will "start making announcements." Second, even assuming Defendants made announcements (*none are audible on the recording submitted to the Court*), the audio indicates that Defendants released the canine into Plaintiff's home approximately six seconds after stating that they will start making announcements.[5] *Compare* ECF No. 16 at 2 n.1 at 12:38 (unknown deputy stating that he will start making announcements), *with id.* at 12:44 ("We're sending the dog in now.").

Viewing the facts in the light most favorable to the nonmovant, Plaintiff has adequately alleged facts to show Defendants' entry and search was unreasonable.

\* \* \*

To sum up, Defendants cannot satisfy either prong of the exigent circumstances test. *McInerney*, 791 F.3d at 1231; *Mascorro,* 656 F.3d at 1205. Without an emergency or other exigent circumstance present to justify the warrantless entry and search of Plaintiff's home, Plaintiff has sufficiently pleaded a Fourth Amendment violation.

    2.    "Clearly Established" Prong

A public official's conduct violates clearly established law when, at the time of the challenged conduct, "the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-*

---

911 call triggered the incident in question, and Plaintiff refers to it, albeit briefly, throughout his amended complaint. ECF No. 5, ¶¶ 1, 15, 16 89. Therefore, the Court draws facts from this audio as well.

[5] The Court acknowledges that there may be a "break" in the audio (as indicated by beeps in the recording), but that information was not briefed or otherwise presented to the Court.

*Kidd*, 563 U.S. 731, 741 (2011) (citations and formatting omitted). A right is clearly established "when a Supreme Court or Tenth Circuit decision is on point, or if the clearly established weight of authority from other courts shows that the right must be as the plaintiff maintains." *Thomas v. Kraven*, 765 F.3d 1183, 1194 (10th Cir. 2014) (quoting *PJ ex rel. Jensen v. Wagner*, 603 F.3d 1182, 1196–97 (10th Cir. 2010)). It is the plaintiff's burden to demonstrate that the right was clearly established at the time of the challenged conduct. *Surat v. Klamser*, 52 F.4th 1261, 1270 (10th Cir. 2022) (quotation omitted); *Thomas v. Durastanti*, 607 F.3d 655, 669 (10th Cir. 2010) ("The plaintiff bears the burden of citing to us what he thinks constitutes clearly established law."). While the plaintiff need not cite a case directly on point or with "identical facts," the plaintiff still must show that the law would have informed a reasonable officer in the defendant's position that his conduct was unlawful in that situation. *See Kapinski v. City of Albuquerque*, 964 F.3d 900, 910 (10th Cir. 2020); *Knopf v. Williams*, 884 F.3d 939, 949 (10th Cir. 2018) (citation omitted). That is, the clearly established law must place the constitutional issue "beyond debate." *Mullenix*, 577 U.S. at 16 (quotation omitted).

Here, Defendants' only proffered justification for entering Plaintiff's home without a warrant was the purported "exigencies of the situation"—an argument the Court has already rejected. Thus, it was clearly established at the time of the incident that law enforcement officials violate the Fourth Amendment when they enter and search a home without a warrant, consent, or an exigency. *See McInerney*, 791 F.3d at 1236–38 (holding that warrantless search of a home absent exigent circumstances was clearly established law). Plaintiff has satisfied his burden of showing that the law was clearly established.

* * *

Defendants' motion to dismiss Claim One on qualified immunity grounds is denied.

**D.     Claim Two: Unlawful Arrest**

*1.     "Constitutional Violation" Prong*

"A police officer may arrest a person without a warrant if he has probable cause to believe that person committed a crime." *Romero v. Fay*, 45 F.3d 1472, 1476 (10th Cir. 1995). "Probable cause exists if facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense." *Jones v. City and County of Denver*, 854 F.2d 1206, 1210 (10th Cir. 1988). In the qualified immunity context, courts ask whether there was "arguable probable cause" for the challenged conduct. *Stonecipher v. Valles*, 759 F.3d 1134, 1141 (10th Cir. 2014). "Arguable probable cause is another way of saying that the officers' conclusions rest on an objectively reasonable, even if mistaken, belief that probable cause exists." *Id.*

Defendants argue that their conduct was lawful because they had arguable probable cause to arrest him for criminal mischief. ECF No. 16 at 9. The Court disagrees.

At this early stage, Plaintiff has sufficiently pleaded an unlawful arrest in violation of the Fourth Amendment. Defendants had very little information to inform their decision to arrest Plaintiff, and they did nothing to investigate the alleged crime. Specifically, the 911 caller reported a man breaking a front window and then fleeing without entering. ECF No. 5, ¶ 59. "When Defendants approached the broken window, they did not hear or observe anything inside the home." *Id.*, ¶ 60. Then, once inside the home, Plaintiff

12

confirmed that he lived there. *Id.*, ¶¶ 63–64. Nonetheless, Defendants handcuffed and arrested him. *Id.* Although Plaintiff confirmed that "he was the one who broke the window to his own home," Defendants did not ask him why he broke the window or whether he owned the home. They simply arrested him.

Had they asked, the answer may have been simple: that he had lost his keys and he broke the window because it was frigid outside. Indeed, in considering the 911 audio Defendants asked the Court to consider, the 911 caller acknowledged that the person who broke the window may have just lost his keys and decided to climb through the window of his own home—which makes sense because Plaintiff alleged that it was "freezing cold" that February night. ECF No. 25 at 5; ECF No. 5, ¶ 37. Defendants' explanation of this portion of the 911 call is unavailing, *see* ECF No. 25 at 5 ("A review of the 911 audio will show *only two passing comments* regarding the possibility of lost keys, and that both were uncertain and purely speculative; at no point did the caller state the suspect 'looked' like he forgot his keys." (emphasis added)), as the caller clearly considered the possibility that the man may have been breaking into his own home. *See* ECF No. 16 at 2 n.1 (Vimeo link) at 01:18 ("He may have just been breaking into his house because he lost his keys or something."), *id.* at 6:25 ("Yeah, it might be his house and he just lost his keys. I don't know.").

Whether the Court "view[s] it as a need for more pre-arrest investigation because of insufficient information" or "inadequate corroboration," the information Defendants possessed fell short of "reasonably trustworthy information indicating that a crime had been committed" by Plaintiff. *Cortez*, 478 F.3d at 1116–17 (citing *BeVier v. Hucal,* 806

13

F.2d 123, 128 (7th Cir. 1986) ("A police officer may not close her or his eyes to facts that would help clarify the circumstances of an arrest. Reasonable avenues of investigation must be pursued especially when, as here, it is unclear whether a crime had even taken place."); *id.* at 1116 n.7 ("[M]erely because officers are not required to do a more thorough investigation once they have probable cause 'does not suggest that an officer has *no duty* to investigate an alleged crime before making an arrest.'" (quoting *Gardenhire v. Schubert*, 205 F.3d 303, 318 (6th Cir. 2000)).

Plaintiff has plausibly alleged that Defendants arrested him without probable cause in violation of the Fourth Amendment.

### 2. "Clearly Established" Prong

Having determined at this early stage that Defendants lacked arguable probable cause to arrest Plaintiff, the law was clearly established that the Fourth Amendment prevented Defendants from arresting Plaintiff under those circumstances. *See Cortez*, 478 F.3d at 1116.

\* \* \*

Dismissal of Claim Two on qualified immunity grounds is therefore unwarranted.

### C. Claim Three: Excessive Force

#### 1. "Constitutional Violation" Prong

The Fourth Amendment outlaws the use of excessive force while making an arrest. *Casey v. City of Fed. Heights*, 509 F.3d 1278, 1281 (10th Cir. 2007). In evaluating a Fourth Amendment claim of excessive force, courts ask "whether the officer's actions are objectively reasonable in light of the facts and circumstances confronting them." *Graham*

*v. Connor*, 490 U.S. 386, 397 (1989) (internal quotations omitted). Answering this question "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* at 396 (internal quotations omitted). The government's interest at stake is determined under the totality of the circumstances and is guided by the *Graham* factors: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.*

Looking at the totality of the circumstances alleged, Plaintiff has sufficiently pleaded an excessive force claim. As noted above, Defendants lacked arguable probable cause that Plaintiff had engaged in criminal activity. There also was insufficient evidence to suggest that Plaintiff posed an immediate threat to others. Defendants argue that they "feared a victim may be captive inside the home at 7:00 p.m. -- a time when residents would ordinarily be present." ECF No. 25 at 7. But Defendants point to no allegations or evidence that anyone else was in the home. Plaintiff also alleges that he was sleeping in his own bed when the canine attacked him. ECF No. 5, ¶ 75. Taken as true as the Court must, those allegations show that Plaintiff posed no threat to anyone nor was he actively resisting arrest. *Id.*, ¶¶ 75–77. Thus, in the absence of any facts suggesting that Defendants heard or observed any aggressive or threatening conduct, under the present alleged facts, Defendants' conduct—releasing a canine into a home without any warning (or, at most, approximately a six-second warning)—was unreasonable.

On the facts alleged, Defendants employed unnecessary and excessive force in

violation of the Fourth Amendment when they arrested Plaintiff on February 11, 2022.

### 2. "Clearly Established" Prong

It is clearly established in the Tenth Circuit that a police officer may not use excessive force on a non-violent, non-resisting suspect. *Casey*, 509 F.3d at 1282–83. This is especially true where, as here, the suspect was not given any "chance to submit peacefully to an arrest." *Id.*

Plaintiff alleges that he was sleeping in his bed at the time Deputy Kyle released his canine and ordered the canine to "attack and bite Mr. Luethje." ECF No. 5, ¶ 71. He alleges that he posed no threat to the deputies or anyone else at the time of the attack. *Id.*, ¶ 75. Under these circumstances, it was clearly established in this Circuit that there were limits to the amount of force that the deputies could use, no matter the form or manner that force may take. *See Morris v. Noe*, 672 F.3d 1185, 1191–97 (10th Cir. 2012) (officer employed excessive force when officer threw down suspect who carried no weapon, made no overt threats, and did not get within reach of the officer); *Cavanaugh v. Woods Cross City*, 625 F.3d 661, 666–67 (10th Cir. 2010) (holding that it was clearly established that the officer could not use a Taser against unarmed misdemeanant who did not pose an immediate threat and was not resisting or evading arrest without first warning the suspect).

Courts in this Circuit have extended these principles to police canine encounters. *See, e.g., Mullins v. City of Colorado Springs*, 575 F. Supp. 3d 1360, 1372 (D. Colo. 2021) (the plaintiff was in his home in the shower and did not hear any warnings before the officers released the canine; the Court held that the plaintiff's "right not to be attacked by

16

a canine in these circumstances was clearly established by February 27, 2019"); *Cook v. City of Albuquerque*, 639 F. Supp. 3d 1185, 1202 (D.N.M. 2022) (refusing to grant officer's summary judgment on excessive force claim for deployment of police dog without warning); *Trujillo v. City of Lakewood, Colo.*, No. CIVA08CV00149-WDM-CBS, 2009 WL 3260724, at *4 (D. Colo. Oct. 9, 2009) (citing *Casey* and finding that "deploying a dog without restraint or warning is similar to using pepper spray or taser on a suspect without giving the suspect a warning and chance to first comply"); *id.* ("I conclude that [] a reasonable officer would be on notice that releasing a police dog, without first warning and giving a suspect the opportunity to comply, is an unconstitutionally excessive use of force."); *cf. Crall v. Wilson*, 769 F. App'x 573, 577 (10th Cir. 2019) (use of police canine could be reasonable where officer loudly announced that he would deploy canine if the occupant of the bedroom did not emerge); *Marquez v. City of Albuquerque,* 399 F.3d 1216 (10th Cir. 2005) (officer acted reasonably in using canine to apprehend fleeing suspect after high-speed chase because the officer first warned the suspect to halt).

The Court finds that a reasonable law enforcement officer in Defendant Kyle's situation would be on notice that releasing a police dog into a private home without warning and without the suspect posing an immediate threat was clearly established at the time of the incident.

\* \* \*

Defendants' motion to dismiss Claim Three on qualified immunity grounds is denied.

### D. Claim Four: Failure to Intervene

Defendants argue that Deputy Kelly had no obligation to intervene because a clearly established constitutional violation did not occur. ECF No. 16 at 14–15. Because the Court has determined that Plaintiff sufficiently pleaded a clearly established constitutional violation, and because Defendants did not respond to Plaintiff's authority or arguments with respect to Claim Four, the Court denies Defendants' request to dismiss that claim.

## IV. CONCLUSION

Consistent with the foregoing analysis, Defendants' Motion to Dismiss Amended Complaint, ECF No. 16, is DENIED.

DATED this 5th day of June 2024.

BY THE COURT:

_____
Charlotte N. Sweeney
United States District Judge