**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:23-cv-03054-CNS-TPO

TYLER LUETHJE,

     Plaintiff,

v.

TRAVIS KYLE and SCOTT KELLY,

     Defendants.

---

**PLAINTIFF'S RULE 702 MOTION TO EXCLUDE TESTIMONY OF DEFENSE
EXPERT MATTHEW HANAGAN**

---

Plaintiff Tyler Luethje respectfully submits this Motion to Exclude Testimony of Defense Expert Matthew Hanagan, and states as follows:

**<u>CERTIFICATE OF CONFERRAL</u>**

Plaintiff's counsel emailed defense counsel to determine Defendant's position on this Motion. As of this filing, Defendant's position is unknown and assumed opposed.

**<u>INTRODUCTION</u>**

This civil rights action arises from an unnecessary and unreasonable deployment of a police canine into Plaintiff Tyler Luethje's home, where the canine bit and severely injured him while he was sleeping in his bed. Defendants have endorsed Matthew Hanagan to offer an "Expert Opinion Report" (Ex. B) asserting that the deployment of K-9 "Sig" was lawful, minimal, and objectively reasonable.

A rigorous review of Hanagan's report and CV (Ex. A) reveals that his testimony

1

fails every foundational threshold mandated by Federal Rule of Evidence 702, including lack of professional breadth/qualifications, lacking any identifiable methodology, asserting impermissible legal conclusions, asserting impermissible state-of-mind opinions, credibility vouching, and rendering opinions outside of his expertise.

Two features of the record frame the motion. First, Defendants separately disclosed Deputy Ian Austin as a non-retained expert "in law enforcement canine training, use, and tactics," the subject on which Hanagan opines but holds no credential. Defs.' Expert Disclosures 2 (Ex. C). Second, the Tenth Circuit has already supplied the governing framework. On interlocutory appeal from the denial of the deputies' motion to dismiss, taking the allegations in the light most favorable to Plaintiff, the court held that the warrantless entry lacked exigent circumstances, the arrest lacked probable cause, and the use of a police canine against a non-resisting, non-fleeing suspect was clearly established excessive force. *Luethje v. Kyle*, 131 F.4th 1179, 1189–99 (10th Cir. 2025).

## LEGAL STANDARD

Rule 702 assigns the trial court a gatekeeping duty. Expert testimony is admissible only if the witness is qualified, the opinion rests on sufficient facts and a reliable method reliably applied, and the testimony will help the jury decide a fact in issue. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147–49 (1999) (gatekeeping reaches experience-based opinion). The proponent bears the burden to establish each requirement by a preponderance of the evidence, and the court "must satisfy itself that the proposed expert testimony is both reliable and relevant" before the jury hears it. *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009) (en banc).

2

Experience alone can qualify an expert and can supply a method. But it does not do so automatically. A witness relying on experience "must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *Id. at* 1258 (quoting Fed. R. Evid. 702 advisory committee's note (2000)); accord *United States v. Medina-Copete*, 757 F.3d 1092, 1104 (10th Cir. 2014). When the proponent fails on any element, the opinion is inadmissible, and a court may begin and end with qualification. *Barrientos-Sanabria v. Holte*, 2012 WL 4863700, *3 (D. Colo. Oct. 15, 2012) ("any inadequacy in the proof on any of Rule 702's elements may render the entire opinion inadmissible").

An expert may never "define the law of the case." *Specht v. Jensen*, 853 F.2d 805, 809–10 (10th Cir. 1988) (en banc). Testimony is proper "if the expert does not attempt to define the legal parameters within which the jury must exercise its fact-finding function." *Id.* A qualified law-enforcement expert may opine on whether conduct conformed to accepted police practice, but not on the ultimate legal question. *Zuchel v. City & County of Denver*, 997 F.2d 730, 738–41 (10th Cir. 1993). "Whether [an officer's] actions were objectively reasonable is a question that the jury must answer." *Huff v. City of Aurora*, 2024 WL 1141492, *1 (D. Colo. Mar. 15, 2024).

## ARGUMENT

I. **HANAGAN IS NOT QUALIFIED TO OPINE ON NATIONAL STANDARDS OR THE TYPE OF K-9 FORCE AT ISSUE.**

Qualification is a threshold question, and Hanagan fails in regard to breadth and subject matter. Hanagan does not have sufficient foundational expertise to render reliable opinions pertinent to this case and should be excluded as an expert in whole.

### a. Limited Agency and Standards Exposure

Hanagan's entire 26-year operational history is entirely localized within a single county (Arapahoe County) and two contiguous prosecutorial districts (the 18th and 23rd Judicial District, which until a recent split were one combined district). Ex. A. While Plaintiff does not dispute that Hanagan is an experienced criminal investigator, he lacks any experience with police operations within the jurisdiction at issue (Douglas County), multi-agency experience within the state of Colorado, and he has no multi-state operational exposure, federal law enforcement tenure, or consulting experience with diverse municipalities. Ex. A and B. His career is exclusively bounded within a small geographic pocket of Colorado, leaving him entirely unequipped to render broad applicable expert opinions with the multi-jurisdictional breadth, academic scholarship, or national institutional credentials required to formulate or testify to "industry-wide standards."

Furthermore, Hanagan has worked as a peace officer only in the capacity of a "deputy" and "sergeant" with what appears to be very limited supervisory authority in Arapahoe County, with some local instructional experience regarding "force tactics," "office survival" and "criminal procedure." Ex. B at 1. None of those areas provide him the breadth of knowledge sufficient to say what is typical, routine, expected, or appropriate in the case at bar. Hanagan lacks sufficient command and review experience to critique the finer points of the police misconduct at issue. Hanagan holds zero command tenures, active memberships, or advisory roles within the benchmark organizations that research and establish national police practices, such as the International Association of Chiefs of Police (IACP), the Police Executive Research Forum (PERF), or the Commission on

4

Accreditation for Law Enforcement Agencies (CALEA). He points to no reliable standards (from these sources or otherwise) within his report, which leaves no foundation for his opinions other than his limited anecdotal experiences in these two highly limited positions and localities.

Consequently, he cannot attest to national or state-wide standards, national or state-wide practices, and/or national or statewide training for the policing or K-9 industry as a whole. His experiences are incapable of informing broader opinions. He lacks the foundation necessary to reliably distinguish between mere anecdotal instructions he may have received and what is expected of all or other officers. Any admission of his limited opinions would likely mislead the jury with inadmissible *ipse dixit*. *Scott v. City of Tulsa*, 2025 WL 112104, at *5 (N.D. Okla. Mar. 31, 2025) (anecdotal beliefs cannot be passed off as universal "industry standards" without a verified methodology linking their personal experience to broad national customs); *Davis v. JIAC*, No. 22-cv-1134, 2024 WL 149021, at *4 (D. Kans. Jan. 12, 2024) (testimony regarding national standards must be firmly tethered to verified, established customs rather than personal assumptions).

### b. No K-9 force Credentials or Experience

There is also a profound mismatch between Hanagan's actual law enforcement background and the specialized opinions he purports to offer. The Tenth Circuit treats police practices not as a single monolith, but as an array of distinct technical disciplines. General experience as an investigator or patrol deputy does not grant a witness a blank check to testify as an expert in highly technical subfields like canine operations.

The critical problem with specialty is the fit between his experience and the opinion

offered. The force in this case was a police dog, sent into a home to find and bite. Canine deployment is a discipline with its own training, certification, and standards; the Sheriff's Office requires its handlers to complete a dedicated certification program and to maintain it through recurring monthly canine training. DCSO Policy S-100 §§ V, XI.B. Hanagan's curriculum vitae shows none of it. His career is narcotics and homicide investigation. Ex. A (Hanagan CV). He has no canine training and no canine deployment in his background, and his five prior expert qualifications all concerned drug "pricing, packaging, distribution weights." *Id.* He has never been qualified to testify about police dogs.

A career of testifying about narcotics does not qualify a witness to opine about canine force. Qualifications "must relate to the opinions offered in the present case," and prior testimony in other matters "is not relevant unless the testimony was of the same nature using the same methodology." *Barrientos-Sanabria*, 2012 WL 4863700, at *2 n.1. In *Barrientos-Sanabria*, the court excluded a law-enforcement-procedure and use-of-force expert for that precise failure, holding that the proponent "failed to establish that [the witness] is qualified to provide expert testimony on law enforcement procedures and use of force." *Id.* General law enforcement background is insufficient when an encounter involves highly specific tactical mechanics outside the expert's professional experience. Because Hanagan has zero foundational background in the deployment parameters or containment limits of police canines, he lacks the technical "knowledge, skill, experience, training, or education" required by Rule 702(a) to evaluate the use of K-9 Sig.

This is a foundation defect, and it goes to admissibility, not merely to weight. Defendants will respond that a missing specialty is a subject for cross-examination. That

answer fails where the witness has no foundation for the specific opinion at all. The Tenth Circuit made the point in *Medina-Copete*. The district court there let a law-enforcement officer testify "based on his experience without considering the relevance or breadth of that experience," and the court of appeals reversed: the expert "should not have been permitted to testify under Fed. R. Evid. 702 because his experience did not render him qualified;" "his knowledge did not assist the jury, and his opinion was not based on the proper application of reliable principles and methods." 757 F.3d at 1101–04. Experience that does not connect to the opinion is a Rule 702 defect, not a question for the jury.

Defendants have already conceded the gap. They designated Deputy Austin, a separate witness, to testify about "law enforcement canine training, use, and tactics." Ex. C. That designation confirms what the CV shows: canine use of force is a distinct specialty, and it is not Hanagan's. As to his canine and use-of-force opinions, the Court may begin and end with qualification. *Barrientos-Sanabria*, 2012 WL 4863700, *3.

### c.  Hanagan Demonstrates His Lack of Reliability in the Report

As they say, the proof is in the pudding. The expert report asserts two matters that are grossly incorrect and misleading, which likely stem from his inexperience.

First, Hanagan assumes and asserts an "all law enforcement standard" by claiming that "in most, if not all law enforcement agency policy's [sic] officers are permitted to use one level of force higher than what is being used against them." Ex. B at 3. He cites no empirical research, comparative data tables, national studies or policy to support this "one-level-higher" framework. He references no policing body, consensus standards or consensus conclusions, such as IACP, PERF, or CALEA. He certainly has no experiential

foundation for the assertion. Because his limited investigator experience is entirely localized within two neighboring Colorado counties, his attempt to project a universal industry custom lacks any reliable evidentiary foundation. It is pure *ipse dixit*.

Hanagan's report also opines multiple times that the K-9 force applied was "reasonable" under the circumstances. Aside from the legal conclusion deficiency (discussed below), the report applies the wrong constitutional standard in discussing such reasonableness. Hanagan states the governing test for objective reasonableness is whether force was "applied in a good faith effort to maintain and restore discipline or maliciously and sadistically for the very purpose of causing harm." Ex. B at 4. That is the old Eighth Amendment standard for a convicted prisoner's excessive-force claim*. See Whitley v. Albers,* 475 U.S. 312, 320 (1992). It is not the Fourth Amendment's objective-reasonableness standard, which governs an arrestee's claim and asks whether the force was objectively reasonable in light of the facts confronting the officer. *Graham v. Connor*, 490 U.S. 386, 395, 397 (1989). *Graham* did not merely announce a different test; it disavowed the one Hanagan used. The Supreme Court held that the Fourth Amendment inquiry is objective and that "subjective concepts like 'malice' and 'sadism' have no proper place in that inquiry." *Graham*, 490 U.S. at 399. Hanagan's report rests on the very concepts the governing standard excludes. *See* Ex. *B* at 7 ("The Deputies application of force was in good faith believing…"). An opinion built on the wrong legal framework is not "the product of reliable principles and methods" reliably "applied ... to the facts of the case." Fed. R. Evid. 702(c)–(d). Such errors also assist in demonstrating how a lack of qualifications can lead to fundamentally defective opinions that tend to confuse, mislead,

and waste time during trial. Fed. R. Evid. 403.

## II.    HANAGAN'S OPINIONS THAT THE ENTRY AND FORCE WERE "LAWFUL," "REASONABLE," AND "APPROPRIATE" ARE INADMISSIBLE LEGAL CONCLUSIONS.

Even if a witness were highly qualified, they are categorically prohibited from offering ultimate legal conclusions or applying the law directly to the facts to tell the jury how to decide the case. *See* Fed. R. Evid. 704 advisory committee's note. Hanagan's report systematically violates this restriction by directly applying his interpretations of the constitutional language of the Fourth Amendment. For example, Hanagan explicitly usurps the jury's role by stating:

- "This Investigator concludes that the use of force performed by DCSO Deputies... was **reasonable, appropriate, minimal, lawful**, and within the standard protocol."

- "Using the Graham v. Connor objective reasonableness standard and the factors for evaluation of reasonableness, this Investigator's opinion is... [the] application of force occurred only after lesser means were attempted."

These assertions do not assist the jury; they attempt to decide the lawsuit by instructing the jury how they should decide.

In *Specht*, the Tenth Circuit held that expert testimony on the law is completely improper because it invades the province of the court and the jury. 853 F.2d at 807–08. The court noted that an expert may describe standard operational mechanics, but crossing the line into declaring whether an act was "lawful" or "unlawful" is a fatal evidentiary defect. *Id.* at 808. This principle is applied strictly to use-of-force experts under Fourth Amendment standards. For example, in *Zuchel v. City & County of Denver*, 997 F.2d 730, 738–39 (10th Cir. 1993), the Tenth Circuit affirmed that while a police practices expert may properly discuss standard training guidelines and general force alternatives,

they are strictly prohibited from offering opinions on the ultimate legal question of whether an officer's physical force was constitutionally "reasonable" under *Graham v. Connor*.

More recently, the District of Colorado reinforced this line in *Cruz v. City & Cty. of Denver*, 2023 WL 4418259, *4 (D. Colo. July 7, 2023), explicitly holding that use-of-force experts may detail nationally recognized operational parameters, but are legally barred from using terms of art like "reasonable," "excessive," or "unnecessary" to characterize an officer's behavior. Hanagan's attempt to judge the case under his interpretation of the *Graham* (or any other "reasonableness" framework) must be excluded. An opinion that pronounces the entry and force "lawful" supplies no fact the jury needs and invites it to adopt a witness's legal conclusion in place of the Court's. Fed. R. Evid. 403.

## III.    HANAGAN'S REPORT EMPLOYS NO RELIABLE METHODOLOGY AND RELIES ON STATE-OF-MIND ASSERTIONS AND CREDIBILITY VOUCHING

Rule 702(c) and (d) require that an expert apply reliable methods to reach conclusions and that their conclusions reflect reliable application of those methodologies to the actual facts of the case. A report that "fail[s] to articulate any underlying methodology" for determining the expert's opinion, is reason enough to exclude the opinions within. *Champagne Metals v. Ken-Mac Metals, Inc.,* 458 F.3d 1073, 1079-80 (10th Cir. 2006). Hanagan's report contains no methodology, no verifiable standards, no literature reviews, and no data analysis. Instead, he acts as a partisan advocate, performing a one-sided evaluation that asserts defense-friendly state of mind conclusions, and cherry-picks selected aspects of the defendants' disputed story as absolute fact – while completely ignoring the objective, contradictory record and the facts recognized from law of the case that veer toward a contrary result. *See* Ex. B at 3

10

(materials reviewed), 5 (summary of facts), 6 (analysis), and 7 (conclusions).

### a.  Subjective state-of-mind conclusions

An expert cannot opine on a person's subjective intent, motivations, or state of mind. *George v. Metro. Prop. & Cas. Ins. Co.,* 2020 WL 70424, at *10–11 (D. Colo. Jan. 2, 2020) (excluding reference to defendant's subjective intent he "intentionally disregarded…" and "knowingly and intentionally…ignored…"); *Sanchez v. Duffy,* 416 F. Supp. 3d 1131, 1150–51 (D. Colo. 2018) (excluding opinions on defendants' state of mind); *Ebonie S. ex rel. Mary S. v. Pueblo Sch. Dist. 60*, 2011 WL 1755208, at *13 (D. Colo. May 5, 2011) (excluding opinions or beliefs concerning the intentions or motivations of any party). Hanagan impermissible state-of-mind, motive, and subjective-intent assertions include the following examples:

- He states that the on-scene *"Deputies **believed** the male was still in the residence." Ex. B at 6.*

- He asserts that *"Deputies **believed** the male had unlawfully entered the residence..." Id. at 5*

- He claims that verifying the front door was locked acted as information *"furthering **their belief** that the male was unlawfully in the residence.*" *Id*. at 6.

- He justifies the deployment by writing that the deputies acted *"to stop what they **believed** to be a burglary in progress.*" *Id.* at 6.

- He later claims that scene noises *"reinforced **Deputies belief** that a crime was occurring"* and that a lack of swift compliance served to *"further[] **Deputies belief** that he was unlawfully in the residence." Id.* at 7.

- He asserts "[t]he Deputies application of force was in **good faith believing** that a felony burglary to a residence was occurring in their presence."

Under *Graham v. Connor*, 490 U.S. 386 (1989), the subjective intent, motivations, or "good faith" of an officer are completely irrelevant. The test is strictly one of *objective*

11

*reasonableness* based on external, observable facts. By injecting assertions of "good faith" and subjective "beliefs," Hanagan is inviting the jury to use an incorrect, subjective legal standard, which is highly prejudicial under Rule 403 as misleading and confusing.

### b. Vouching for Defendants Without Foundation or Methodology

Expert opinions may be excluded for lack of foundation and reliability because they are based on "the self-serving statement[s] of an interested party." *Champagne Metals v. Ken-Mac Metals, Inc.,* 458 F.3d 1073, 1079-80 n.4 (10th Cir. 2006). Hanagan bases his conclusion on a one-page fact summary and a one-page recitation of assertions made by officers in their reports (which he titles "analysis"). Ex. B at 6 ("Deputies noted…," "deputies believed…," deputies heard…," etc.). His factual findings come primarily from the deputies' assertions, which completely ignores the core facts establishing excessive force and the lack of probable cause in the Amended Complaint and record:

- The original 911 caller explicitly reported that the unknown male broke the window and then **"ran away from the residence without entering**."

- There were **no reports of anyone entering the home** prior to the deputies' arrival.

- Plaintiff Tyler Luethje was **actively sleeping in his bed** when the canine blindly entered and attacked him.

Furthermore, opinions which assert there was, for example, an "immediate threat" based on the hypothetical possibility that others may have been in the house are speculative and unreliable. Ex. B at 7. Opinions asserting there was "resisting arrest" based solely on a purported suspect failing to verbally respond to warnings broadcast outside of a home (likely outside of earshot – something this expert is not qualified to contradict), is not providing meaningful assistance to the jury to help them understand the

12

facts; rather, he is providing conclusions designed to confuse the issues, vouch for a single-sided version of the facts, and assert as fact speculation and legal conclusions.

Hanagan also opines that Plaintiff was "resisting," that he "failed to comply," and that he "had ample time to comply." Ex. B at 7. Those are contested questions of fact that turn on credibility, and "the credibility of [a witness] is not an appropriate subject for expert opinion testimony." *United States v. Hill*, 749 F.3d 1250, 1260 (10th Cir. 2014). Such testimony "usurps a critical function of the jury" and "is not helpful to the jury, which can make its own determination of credibility." *Id. at* 1261. The bar applies whether the expert bolsters or attacks the witness. *Id.*; *see also Huff*, 2024 WL 1141492, *3 (applying *Hill* to exclude police-practices opinion). Whether Plaintiff was "resisting" is an ordinary credibility question the jury is equipped to decide for itself.

By building his opinion entirely on Defendants' self-serving factual assertions and assumptions while ignoring the core disputed evidence, Hanagan fails a fundamental reliability mandate of Rule 702: experts are not permitted to resolve material factual disputes or vouch for the credibility of a party's narrative. *See Hill*, 749 F.3d at 1258. An expert can explain what standard police protocols dictate *under a hypothetical set of parameters*, but the jury alone must decide which party's narrative actually occurred.

## IV.    THE REMAINING OPINIONS ARE UNRELIABLE IPSE DIXIT ASSERTIONS OR BASED ON THE WRONG LEGAL STANDARD.

All of the recited opinions on page 7 of the report are *ipse dixit*. The report offers no methodology, no identification of professional standards, no verifiable application of standards applied to the facts, and no literature other than legal standards. Ex. B at 4-7; Fed. R. Evid. 702(c-d). The conclusions are prefaced with "based on my training and

experience" and then stated in conclusory form. Experience can be a reliable basis, but only if the expert "explain[s] how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *Medina-Copete*, 757 F.3d at 1104; *Nacchio*, 555 F.3d at 1258. "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

The gap is widest where the report should be strongest. Hanagan lists the Douglas County Sheriff's Office canine policy among his reviewed materials, then never analyzes it or compares it. He does not ask whether the deployment satisfied the policy's own criteria, or standard criteria at all. He lists the *Graham* factors and asserts conclusions about them without any real discussion, standards, or definitions.  A witness who recites that he reviewed the governing standard, then renders a bottom-line "reasonable" conclusion without connecting that standard to the facts, has supplied a verdict, not an opinion. Rule 702(d) requires the opposite.

The report applies the wrong constitutional standard. Hanagan states the governing test as whether force was "applied in a good faith effort to maintain and restore discipline or maliciously and sadistically for the very purpose of causing harm." That is the Eighth Amendment standard for a prisoner's excessive-force claim. It is not the Fourth Amendment's objective-reasonableness standard, which governs an arrestee's claim and asks whether the force was objectively reasonable in light of the facts confronting the officer. *Graham v. Connor*, 490 U.S. 386, 395, 397 (1989). A jury instructed on the correct

14

standard cannot be helped by an opinion measured against the wrong one.

## V. THE OPINION THAT THE FORCE WAS "MINIMAL" AND THE INJURY "MINOR" IS OUTSIDE HANAGAN'S EXPERTISE AND CONTRADICTED BY THE RECORD.

Hanagan opines that "[t]he application of force was both minimal and the injury inflicted was minor in nature." Ex. B at 7. The injury-half of that opinion is a medical judgment about the severity of a physical wound. It belongs to a medical expert, not to a use-of-force investigator with no medical qualifications. An expert may opine only within his expertise, and injury severity is not within Hanagan's.

The opinion is also contradicted by the record Hanagan claims to have reviewed. The body-worn-camera footage records multiple bite wounds to the arm, bicep, and side, heavy bleeding, and Plaintiff reporting that his arm was numb while deputies worked to keep him from "bleeding out." And the bites continued while Plaintiff pleaded that he was not fighting back. Whether that force was "minimal" is, at the least, a contested question for the jury; it is not a fact a witness may declare from the stand. To the extent the "minimal force" characterization is a use-of-force judgment rather than a medical one, it fails because Hanagan is not qualified to render it as to canine force.

## CONCLUSION

The Court should exclude the opinions identified in Parts I-V. Should the Court allow any opinion to survive, it should confine that opinion to a comparison of the deputies' conduct against accepted police practice, and exclude every legal conclusion, canine-specific judgment, opinion on state of mind or credibility, and characterization of the injury. No evidentiary hearing is necessary; the deficiencies appear on the face of the report.

15

Respectfully submitted this 22nd day of June 2026.

*s/ Raymond K. Bryant*
Raymond K. Bryant
Zachary L. Shiffler
Civil Rights Litigation Group, PLLC
1543 Champa St., Ste. 400
Denver, CO 80202
T: (720) 515-6165
raymond@rightslitigation.com
zach@rightslitigation.com
*Attorneys for Plaintiff*

16

## CERTIFICATE OF SERVICE

I hereby certify that on June 22, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*s/ Zachary L. Shiffler*
Zachary L. Shiffler